**Michael Grinblat** (4159752)
Law Offices of Michael Grinblat
817 Broadway, Fourth Floor
New York, NY 10003
Tel:  (347) 796-0712
Fax: (212) 202-5130
michael.grinblatesq@gmail.com
*Attorney for the Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SEMYON GRINBLAT**, individually and on behalf of all others similarly situated, | **COMPLAINT** |
| Plaintiff, | |
| -against- | **CASE NO.: 20-cv-1644** |
| **THREE STARS, CORP.**, **S.I. BAY REALTY, CO., INC.**, **JOHN DOE 1-X**, persons yet unknown, **Limited Liability Companies**, **Partnerships**, **Corporations 1-X**, entities yet unknown, | **JURY DEMANDED** |
| Defendants. | |

**CIVIL COMPLAINT**

SEMYON GRINBLAT ("Plaintiff"), as and for his complaint against THREE STARS, CORP., S.I. BAY REALTY, CO., INC., JOHN DOE 1-X, persons yet unknown, Limited Liability Companies, Partnerships, Corporations 1-X, entities yet unknown (collectively, the "Defendants"), respectfully brings before the Court the below allegations.

**STATEMENT OF THE PLAINTIFF'S CLAIMS**

1.  This is an action under Title III of the Americans with Disabilities Act of 1990 (the "ADA") to enjoin unlawful discrimination based on disability. The Plaintiff was discriminated

1

against on the basis of disability and was denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the place of public accommodation owned, leased, controlled, managed, or operated, by the Defendants.

2. The Plaintiff files this action for himself, and those similarly situated, complaining of the violations of Title III of the ADA. This action is brought under ADA 42 U.S.C. §12182, §12183 and §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964 – the ADA's Accessibility Guidelines, 28 C.F.R. Part 36, subpart D, the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 C.F.R. Part 1191, appendices B and D, the 2010 ADA Standards for Accessible Design ("2010 Standards"), the Building Code of the State of New York, as well as New York State Civil Rights Law §40-c and §40-d, New York State Human Rights Law §296 and New York City Human Rights Law [Administrative Code] §8-107.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §451, §1331, §1337, §1343, §2201, §2202 and 42 U.S.C.A. §12181, *et seq.*, as it involves federal questions regarding the deprivation of the Plaintiff's rights under the ADA.

4. This Court has supplemental jurisdiction over the Plaintiff's allegations arising from the Defendants' state law violations pursuant to 28 U.S.C. §1367(a).

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because all events, or omissions, giving rise to this action, and alleged herein, occurred in this district. Venue is also proper in this district, because the Defendants' property, a public accommodation, which is the subject of this action, is located in, and does business within, this judicial district.

## PARTIES

6. The Plaintiff is, and at all times material to this litigation has been, a resident of Monmouth County, New Jersey.

7. The Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. §12131, who is expressly authorized to bring this action under §308 of the ADA, 42 U.S.C. §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964.

8. The Defendants own, and/or lease (or lease to), and/or have control over, and/or manage, and/or maintain, and/or designed, and/or built, and/or constructed, and/or altered, and/or operate, and at all relevant times operated, the restaurant, Tony's Brick Oven Pizzeria, and the adjacent parking lot, which is provided for the use of the restaurant's customers.

9. The aforementioned restaurant, Tony's Brick Oven Pizzeria, and the adjacent parking lot (collectively, the "Subject Facility") are the subjects of this lawsuit.

10. The Subject Facility is located at 1140 Bay Street, Staten Island, NY 10305.

11. Upon information and belief, THREE STARS, CORP. d/b/a Tony's Brick Oven Pizzeria ("THREE STARS CORP") leases, and/or manages, and/or maintains, and/or has control over, and/or designed, and/or built, and/or constructed, and/or altered, and/or marked, and/or placed signs on, and/or operates, and at all relevant times operated, the restaurant under the name of Tony's Brick Oven Pizzeria.

12. Upon information and belief, THREE STARS CORP leases, and/or manages, and/or maintains, and/or has control over, and/or designed, and/or built, and/or constructed, and/or altered, and/or operates, and/or marked, and/or placed signs on, and at all relevant times

operated, the parking lot adjacent to the restaurant Tony's Brick Oven Pizzeria, which is provided for the use of its customers.

13. Upon information and belief, THREE STARS CORP leases, and/or manages, and/or maintains, and/or has control over, and/or designed, and/or built, and/or constructed, and/or altered, and/or operates, and/or marked, and/or placed signs on, and at all relevant times operated, the parking lot adjacent to the restaurant Tony's Brick Oven Pizzeria, which is provided for the use of its customers.

14. THREE STARS CORP is an American for-profit corporation organized under the laws of the State of New York.

15. THREE STARS CORP is licensed to conduct business in State of New York by the New York State Department of State ("NYS DOS").

16. NYS DOS maintains entity information for THREE STARS CORP in its Corporation and Business Entity Database.

17. The corporate record for THREE STARS CORP shows no registered agent.

18. The corporate record also shows that THREE STARS CORP can receive service of process at 1140 Bay Street, Staten Island, NY 10304, when service is accepted by the Secretary of State on behalf of the corporation.

19. The Office of the Richmond County Clerk maintains a deed record showing that the commercial lot, on which the Subject Facility is located, is owned by S.I. BAY REALTY, CO., INC. ("S.I. BAY REALTY").

20. S.I. BAY REALTY is an American for-profit corporation organized under the laws of the State of New York.

21. S.I. BAY REALTY is licensed to conduct business in New York State by the New York State Department of State ("NYS DOS").

22. NYS DOS maintains entity information for S.I. BAY REALTY in its Corporation and Business Entity Database.

23. The NYS DOS corporate record shows that S.I. BAY REALTY can receive service of process in care of Daniel C. Marotta / Gabor & Marotta LLC at 1878 Victory Boulevard, Staten Island, NY 10314, when service is accepted by the Secretary of State on behalf of the corporation.

24. The NYS DOS corporate record further shows that S.I. BAY REALTY has a chief executive officer, Sergio Scala, with principle executive office at 129 Hunter Avenue, Staten Island, NY 10306.

25. Upon information and belief, S.I. BAY REALTY owns the Subject Facility.

26. Upon information and belief, S.I. BAY REALTY owns, and/or manages, and/or maintains, and/or has control over, and/or designed, and/or built, and/or constructed, and/or altered, and/or marked, and/or placed signs on, and/or operates, and at all relevant times operated, the parking lot adjacent to the restaurant Tony's Brick Oven Pizzeria.

27. Upon information and belief, S.I. BAY REALTY leases the Subject Facility to THREE STARS CORP.

28. The Subject Facility is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104 Place of public accommodation (2), the New York State Human Rights Law §292(9) and the New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

29. Defendants JOHN DOE 1-X and Limited Liability Companies, Partnerships and Corporations 1-X are persons or entities yet unknown, but who or which might share liability as owners or tenants of the Subject Facility. At all relevant times they might have been, and currently might be, either owners, lessors, or operators of the commercial real estate lot in Richmond County, on which the Subject Facility is located, and of the building in which it operates. Either one or several of them might be a landlord and lease its/their building and land, on which the parking lot of the Subject Facility is located, to THREE STARS CORP.

30. The Plaintiff reserves the right to amend this Complaint to add such persons or entities as Defendants when discovered during the course of this action.

31. Either one, or all, of the Defendants, jointly, or severally, simultaneously, or at different times, at all relevant times, was an owner, and/or landlord, and/or lessor, and/or lessee, and/or tenant, of the commercial lot in Richmond County, on which the Subject Facility is located, who jointly, or severally, owned, and/or leased, and/or managed, and/or had control over, and/or designed, and/or constructed, and/or built, and/or altered, and/or modified, and/or painted, and/or marked, and/or placed signs on, and/or operated, and/or maintained, the parking lot adjacent to the restaurant, Tony's Brick Oven Pizzeria, which is provided for the purpose of enabling customers of the restaurant to park at and visit the Subject Facility.

32. Either one of the Defendants, or all of them, jointly or severally, simultaneously, or at different times, at all relevant times, was an owner, and/or landlord, and/or lessor, and/or lessee, and/or tenant, and/or managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or painted, and/or marked, and/or placed

signs on, and/or maintained, and/or altered the building, and/or the restaurant, Tony's Brick Oven Pizzeria, which is part of the Subject Facility.

33. The Defendants are jointly and severally liable for the design, construction, maintenance, management, control, alteration and/or operation of the parking lot, which is part of the Subject Facility.

34. The Defendants are jointly and severally liable for the design, construction, maintenance, management, control, alteration and/or operation of the restaurant, Tony's Brick Oven Pizzeria, which is part of the Subject Facility.

## <u>CLASS ACTION</u>

35. The Plaintiff brings this suit for declaratory and injunctive relief, and as a class action, on behalf of all those similarly situated, who, as persons who must use a wheelchair by reason of various disabilities, and who use or desire to use the services and accommodations offered to the public by the Defendants, are protected by, and are beneficiaries of, the ADA, the New York State Civil Rights Laws, and the New York State and City Human Rights Laws.

36. The Plaintiff, complaining for himself, and all other similarly situated disabled individuals in the City and State of New York, hereby alleges the following:

   a. The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

   b. There are questions of law or fact common to the class, which predominate over any questions affecting only individual members;

   c. The claims or defenses of the representative party are typical of the claims or defenses of the class;

    d.   The representative party will fairly and adequately protect the interests of the class; and

    e.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

37. The claims of the Plaintiff are typical of those of the class. The class, similarly to the Plaintiff, was also not able to have access to the Subject Facility because of the architectural barriers.

38. The Plaintiff will fairly and adequately represent and protect the interests of the members of the class, because, in accordance with Fed. R. Civ. P. 23(g), he has retained, and is represented by, an experienced counsel, who has done the work in identifying and investigating potential claims in the action, who knows the applicable law, who may commit resources to representing the class, who would represent the Plaintiff in complex class action litigation, and because the Plaintiff has no interests antagonistic to the members of the class.

39. A class action may be maintained under Fed. R. Civ. P. 23(a), which is satisfied, as prosecuting separate actions by, or against, individual class members would create a risk of adjudications with respect to them that, as a practical matter, would be dispositive of the interests of the other members, not parties to the individual adjudications, or would substantially impair, or impede, their ability to protect their interests. That risk includes, but is not limited to, the Defendants removing the architectural barriers without either compensating members of the class, or paying them compensatory, and/or statutory, and/or punitive damages, for discrimination, discomfort, personal injuries, pain of body and mind, emotional distress, inconvenience and humiliation, which the class members have suffered

as a result of the Defendants' actions, which violated the ADA, the New York State Civil Rights laws, the New York State Human Rights laws, and the New York City Human Rights laws.

40. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2), because the Defendants had acted, or refused to act, on grounds that apply generally to the class, so that final injunctive relief, or corresponding declaratory relief, is appropriate respecting the class as a whole.

41. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3), because questions of law, or fact, common to class members, clearly predominate over any questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

42. Judicial economy would be served by allowing the matter to proceed as a class action in that it would likely avoid the burden that would be otherwise placed upon the judicial system by the filing numerous similar suits by people who use a wheelchair in the Eastern District of New York.

43. Clarity, consistency and uniformity in law would also be preserved, as maintenance of this lawsuit as a class action would likely eliminate the possibility of inconsistent verdicts, which may be issued, if plaintiffs were to initiate individual lawsuits against the Defendants.

44. References to the Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

## STATUTORY SCHEME

45. On July 26, 1990, the United States Congress enacted the ADA, establishing important

civil rights for individuals with disabilities, including the right to full and equal enjoyment

of goods, services, facilities, privileges and access to places of public accommodation.

46. Congress made the following findings:

   a. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;
   b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;
   c. Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodation, education, transportation, communication, recreation, institutionalization, health services, voting and access to public services;
   d. Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, activities, benefits, jobs or other opportunities; and
   e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (8)

47. Furthermore, Congress also explicitly stated that the ADA had to:

    a. Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

    b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

    c. Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4)

48. Furthermore, pursuant to 42 U.S.C. §12182 and 28 C.F.R. §36.201(a), the congressional intent was to ensure that no place of public accommodation may discriminate against an individual on the basis of such individual's disability, with regard to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at that place of public accommodation.

49. Congress provided commercial businesses at least 18 months from enactment to make their facilities compliant with the regulations in the ADA. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993, if a defendant has ten (10), or fewer, employees and gross receipts of $500,000, or less. 42 U.S.C. §12183; 28 C.F.R. §36.508(a).

50. The 2000 United States census indicates that in the civilian non-institutionalized population more than 49.7 million people in the United States have a disability. The census also indicates that more than 1.39 million New Yorkers have a mobility disability.

51. ADA 42 U.S.C. §12182(a), the New York State Civil Rights laws, the New York State Human Rights laws, and the New York City Human Rights laws recognize individuals with disabilities as a protected class.

52. It is unlawful for a private entity, which owns, leases, leases to, or operates a place of public accommodation, to discriminate against an individual with a disability. 42 U.S.C. §12182(b)(1)(A), 28 C.F.R. §36.201(a) and (b).

53. Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the ADAAG, 28 C.F.R. §36, under which it may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

54. The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, have a non-delegable duty to comply with the ADA, 28 C.F.R. §36.201(a) and (b), the New York State Civil Rights laws, and the New York State and City Human Rights laws.

55. The Subject Facility affects interstate commerce within the meaning of the ADA, 42 U.S.C. §12181(7)(B), and 28 C.F.R. §36.104 Place of public accommodation (2).

56. Regardless of any contractual provisions stating otherwise, the landlord and owner of the property, which houses the public accommodation, cannot escape liability for the tenant's failure to comply with the ADA, 28 C.F.R. §36.201, the New York State Civil Rights laws, and the New York State and City Human Rights laws.

57. Discriminatory intent is not required to establish liability under the ADA, the New York State Civil Rights Laws, and the New York State and City Human Rights laws.

58. One type of disability discrimination is the failure of an owner, or an operator, of a public accommodation to remove those architectural barriers, removal of which is readily achievable.

> A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.

28 C.F.R. §36.304

59. If an individual with a disability is dissuaded from entering, or receiving services of a place of public accommodation, because of the existence of an architectural barrier, the landlord and tenant are subject to criminal liability for discrimination on the basis of disability.

60. The Defendants must remove all barriers, removal of which is readily achievable, that deny an individual with a disability the opportunity to participate in, or benefit from, services, or accommodations, on the basis of their disability, 28 C.F.R. §36.304.

61. Removal of the architectural barriers is readily achievable by the Defendants.

The Plaintiff is informed and believes, and therefore alleges, that the Subject Facility has begun operations, and/or undergone substantial remodeling, repairs and/or alterations, since January 26, 1990, and/or has sufficient income to make readily achievable accessibility modifications.

## FACTUAL ALLEGATIONS AND FIRST CAUSE OF ACTION

### The Plaintiff's Background

62. The Plaintiff, who was born in 1949, is an elderly man aged well beyond his years. He suffers from debilitating diseases and was diagnosed with a neurological condition that affects his walking. The Plaintiff's treating neurologist determined that he has gait

dysfunction, the causes of which include peripheral neuropathy due to diabetes mellitus, chronic right basilar ganglia lacunar infarct and cerebellar ataxia. The Plaintiff's treating neurologist also determined that he has essential tremor. Furthermore, the Plaintiff has decreased vision due to glaucoma and is blind in the right eye. The Plaintiff's gait is unsteady and he falls when he walks short distances. His treating neurologist prescribed him a wheelchair and an accessible parking placard. The Plaintiff obtained the wheelchair and uses it regularly. The New Jersey Motor Vehicle Commission issued him a disability parking placard together with a disability identification card. The disability placard can be used in any car, in which the Plaintiff is travelling. The Plaintiff relies on his wheelchair and parks appropriately in accessible parking spaces. He also needs appropriate and statutorily mandated access aisle next to that car, so that he may transfer from the car to the wheelchair. The Plaintiff is "disabled" under the statute, which in pertinent part states:

> *Disability* means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual…. The phrase *major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

28 C.F.R. §36.104 (italics in original).

63. The Plaintiff must rely on his adult son for the management of his day-to-day care. The son helps the Plaintiff to get to places the Plaintiff wants to visit, such as medical facilities, doctors, pharmacies, stores, supermarkets, restaurants and parks near his home in New Jersey, and near his former home in New York, where he lived for decades, and where his son and friends still live.

64. The parking lot of the Subject Facility has 22 parking spaces.

65. The parking lot of the Subject Facility has one accessible parking space, which is so designated by blue marking lines on pavement, as well as by the international symbol of accessibility painted on the ground.

66. The parking lot of the Subject Facility has one access aisle.

67. The parking lot of the Subject Facility has no van-accessible parking space.

68. In March 2020, the Plaintiff came to the Subject Facility by car with his son.

69. The Plaintiff and his son parked in the accessible parking space in its parking lot.

70. The Plaintiff's son placed the wheelchair in the access aisle.

71. The wheelchair rolled down the steep slope of the access aisle.

72. When the Plaintiff was transferring from the car to the wheelchair, he barely avoided falling on the steep surface of the access aisle.

73. The Plaintiff was then not able to move the wheelchair by rotating its wheels, because the access aisle is too steep.

74. Consequently, the Plaintiff had to rely on his son's assistance to prevent the wheelchair from rolling down the access aisle of the Subject Facility.

75. On the way from the parking lot to the restaurant, Tony's Brick Oven Pizzeria, the Plaintiff was not able to ascend the steep ramp, which led from the parking lot to the walkway, located in between the parking lot and the building's wall, by rotating the wheels of his wheelchair.

76. Consequently, he had to rely on his son's assistance to push him, in his wheelchair, up the ramp.

77. Inside of the restaurant, Tony's Brick Oven Pizzeria, the Plaintiff was not able to use the toilet stall, because it did not have grab bars.

78. Inside of the restaurant, Tony's Brick Oven Pizzeria, when the Plaintiff was paying for the item he was purchasing at the register, he was not able to extend his knees and toes under the sales counter, because there was no space under it for his knees and toes.

79. As a result, the Plaintiff had to rely on his son's assistance to hand his debit card to the cashier.

80. On the way back from the restaurant, Tony's Brick Oven Pizzeria, the Plaintiff was not able to descend down the steep ramp from the walkway to the parking lot by holding on to the wheels of his wheelchair.

81. Consequently, the Plaintiff had to rely on his son's assistance in descending down the ramp from the walkway to the parking lot.

82. Also, on the way back, the Plaintiff was not able to roll the wheelchair to the car with his hands, by rotating its wheels, because the slope of the access aisle is impermissibly steep.

83. Consequently, the Plaintiff had to rely on his son's assistance to ride to the car's door.

84. When the Plaintiff was transferring from the wheelchair to the car in the access aisle, he barely avoided falling on its steep surface.

85. Frustrated, disappointed and humiliated, the Plaintiff left the Subject Facility's parking lot.

86. The Subject Facility's parking lot was designed by the Defendants, who did not have in mind the Plaintiff and his needs, and needs of others similarly situated, to accommodate him and facilitate his access to the Subject Facility.

87. The parking lot of the Subject Facility was designed by the Defendants, who disregarded the accessibility requirements of the Plaintiff, and those similarly situated, by failing to accommodate him and facilitate his access to the restaurant, or worse, and much more likely, designed the parking lot of the Subject Facility with the aim of frustrating his efforts

as much as possible by way of architectural barriers, making him understand and feel the futility of his exertion and patronage of the Subject Facility, and that his patronage of the restaurant is neither needed, desired, or welcomed by the Defendants.

88. The parking lot of the Subject Facility was not designed to accommodate the needs of the Plaintiff, and other similarly situated individuals.

89. The parking lot of the Subject Facility was not constructed to facilitate access to the restaurant by the Plaintiff and other similarly situated individuals.

**The Plaintiff Intends to Return to the Subject Facility**

90. The Subject Facility is located on the North Shore of Staten Island, along the way from the Plaintiff's home to his son's home. The Plaintiff enjoys visiting that area of Staten Island and comes there often.

91. The Subject Facility is conveniently located. The Plaintiff intends to visit the Subject Facility, purchase items offered for sale in it, and enjoy its services, as soon as the architectural barriers are removed.

**Violations of Title III in the Subject Facility**

92. The Plaintiff has difficulties gaining access to the Subject Facility, because of the unlawful architectural barriers, and therefore has suffered an injury in fact.

93. Since at least March 2020, the Defendants have engaged in unlawful practices in violation of the ADA, the New York State Civil laws, and the New York State and City Human Rights laws.

94. The Plaintiff has difficulties visiting the Subject Facility, continues to be discriminated against due to the architectural barriers, which remain at the Subject Facility, all in

violation of the ADA, the New York State Civil Rights laws, and the New York State and New York City Human Rights laws.

95. The barriers to access the Subject Facility have effectively denied the Plaintiff ability to visit the property and have caused him personal injuries, including, but not limited to, pain of body and mind, emotional distress, embarrassment, humiliation and frustration.

96. Because the Subject Facility is a public accommodation, the Defendants are responsible for complying with ADA 28 C.F.R. §36.304.

97. The numerous architectural barriers to access the Subject Facility have endangered the Plaintiff's safety.

98. The Subject Facility violates 42 U.S.C. §12181, §12182, §12183, §12204 of the ADA, 28 C.F.R. §36.302 and §36.304.

99. The Department of Justice ("DOJ") published revised regulations for Title III of the ADA in the Federal Register on September 15, 2010. "These regulations adopted revised, enforceable accessibility standards called the 2010 ADA Standards for Accessible Design, '2010 Standards'". (See, 2010 Standards, Overview) These standards "set minimum requirements – both scoping and technical – for newly designed and constructed, or altered … public accommodation, and commercial facilities to be readily accessible to and usable by individuals with disabilities." Id. The DOJ provided that document in one publication and it includes the 2010 Standards for public accommodation and commercial facilities, which consist of the Title III regulations at 28 C.F.R. Part 36, subpart D, and the 2004 ADAAG at 36 C.F.R. Part 1191, appendices B and D.

100.     The Defendants are discriminating against the Plaintiff, and others similarly situated, because at their Subject Facility they are denying him access to, as well as full

and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, and its parking lot, by means of the architectural barriers, the existence of which is in violation of the ADA, including, but not limited to, those listed below.

101.      "**Identification.** Parking *space* identification signs shall include the International Symbol of *Accessibility* complying with 703.7.2.1. Signs identifying van parking *spaces* shall contain the designation "van accessible." Signs shall be 60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign." *See* 2010 Standards §502.6.

102.      The Defendants have failed to hang a single solitary accessible parking space identification sign in the parking lot of the Subject Facility.

103.      "**Van Parking Spaces.** For every six or fraction of six parking *spaces* required by §208.2 to comply with §502, at least one shall be a van parking *space* complying with §502." *See* 2010 Standards §208.2.4.

104.      The Defendants have failed to designate a van-accessible parking space in the parking lot of the Subject Facility.

105.      The Defendants failed to paint markings on the pavement and designate any van-accessible signage in the parking lot of the Subject Facility.

106.      "**Vehicle Spaces.** Car parking *spaces* shall be 96 inches (2440 mm) wide minimum and van parking *spaces* shall be 132 inches (3350 mm) wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with §502.3. **EXCEPTION:** Van parking *spaces* shall be permitted to be 96 inches (2440 mm) wide

minimum where the access aisle is 96 inches (2440 mm) wide minimum." *See* 2010 Standards §502.2.

107.     The designated accessible parking space at the Subject Facility's parking lot is less than 110 inches wide.

108.     The parking space at the Subject Facility designated as an accessible parking space does not comply with the minimum width requirements for a van-accessible parking space.

109.     "**Floor or Ground Surfaces.** Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles. The exception allows sufficient slope for drainage. Built-up curb ramps are not permitted to project into access aisles and parking spaces because they would create slopes greater than 1:48." *See* 2010 Standards, §502.4 & Advisory.

110.     "**Floor or Ground Surfaces.** Parking *spaces* and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking *spaces* they serve. Changes in level are not permitted. **EXCEPTION:** Slopes not steeper than 1:48 shall be permitted." *See* 2010 Standards §502.4.

111.     Thus, maximum permissible slopes of accessible parking spaces and access aisles serving them must not be steeper than 2.08%. *See* 2010 Standards §502.4.

112.     The Defendants grossly violated §502.4 of 2010 Standards.

113.     The designated accessible parking space has a slope of 5.5%, which is equivalent to the slope steepness of 1:18.18.

114.     The designated accessible access aisle has a slope of 7.3%, which is equivalent to the slope steepness of 1:13.7.

115.        "**General.** *Ramps* on *accessible* routes shall comply with 405." 2010 Standards §405.1.

116.        "**Slope.** *Ramp* runs shall have a *running slope* not steeper than 1:12." "**EXCEPTION:** In existing *sites*, *buildings*, and *facilities*, *ramps* shall be permitted to have *running slopes* steeper than 1:12 complying with Table 405.2 where such slopes are necessary due to *space* limitations." 2010 Standards §405.2.

117.        A slope "steeper than 1:12 but not steeper than 1:10" must not have a maximum rise greater than 6 inches (150 mm). 2010 Standards Table §405.2. **Maximum Ramp Slope and Rise for Existing Sites, Buildings, and Facilities.**

118.        A slope "steeper than 1:10 but not steeper than 1:8" must not have a maximum rise greater than 3 inches (75 mm). 2010 Standards Table §405.2. **Maximum Ramp Slope and Rise for Existing Sites, Buildings, and Facilities**.

119.        "A slope steeper than 1:8 is prohibited." 2010 Standards Table §405.2. **Maximum Ramp Slope and Rise for Existing Sites, Buildings, and Facilities.**

120.        The ramp, leading from the parking lot to the walkway of the Subject Facility has a slope of 18.9%, which is equivalent to slope steepness of 1:5.29.

121.        The ramp, leading from the parking lot to the walkway of the Subject Facility, has a rise of at least 5 inches.

122.        "**Toilet Compartments**. Wheelchair accessible toilet compartments shall meet the requirements of 604.8.1 and 604.8.3." *See* 2010 Standards §604.8.

123.        "**Wheelchair Accessible Compartments**. Wheelchair accessible compartments shall comply with 604.8.1." *See* 2010 Standards §604.8.1.

124.     **"Size.** Wheelchair accessible compartments shall be 60 inches (1525 mm) wide minimum measured perpendicular to the side wall, and 56 inches (1420 mm) deep minimum for wall hung water closets and 59 inches (1500 mm) deep minimum for floor mounted water closets measured perpendicular to the rear wall." *See* 2010 Standards §604.8.1.1.

125.     **"Water Closets.** Where water closets are provided, at least one shall comply with 604." *See* 2010 Standards §213.3.2.

126.     **"Grab Bars**. Grab bars for water closets shall comply with 609. Grab bars shall be provided on the side wall closest to the water closet and on the rear wall." *See* 2010 Standards §604.5.

127.     The toilet stall at the Subject Facility does not satisfy the minimum size requirements of 2010 Standards §604.8.1.1.

128.     No grab bars are provided on the side wall closest to the water closet.

129.     No grab bars are provided on the rear wall of the water closet.

130.     **"Forward Approach.** A portion of the counter surface that is 30 inches (760 mm) long minimum and 36 inches (915 mm) high maximum shall be provided. Knee and toe space complying with 306 shall be provided under the counter. A clear floor or ground space complying with 305 shall be positioned for a forward approach to the counter." *See* 2010 Standards §904.4.2.

131.     Knee and toe spaces are not provided under the counter in the restaurant at the Subject Facility.

132.     The individual Plaintiff, and all others similarly situated, will continue to suffer discrimination and injury without the immediate relief provided by the ADA, as requested

herein. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Subject Facility in order to measure and photograph architectural barriers that are in violation of the ADA to determine all of the areas of non-compliance with the law.

133.     The Defendants have failed to remove architectural barriers to accessibility to the Subject Facility in violation of 42 U.S.C. §12182(b)(2)(A)(iv).

134.     Upon information and belief, since 1992 the Defendants have altered the areas in their Subject Facility, which affect, or could affect, access to or usability of their place of public accommodation.

135.     The Subject Facility has not been designed, constructed, altered, or maintained in compliance with the accessibility standards of Title III of the ADA.

136.     The Defendants have violated their statutory obligation to ensure that their policies, practices and procedures address compliance with the 2010 Standards in that they did not make reasonable accommodations for the individual Plaintiff, and all others similarly situated, and also violated their obligation to remove architectural barriers in order to let disabled individuals enjoy goods and services provided by the public accommodation under their control, thus discriminating against them.

137.     To date, the architectural barriers, the removal of which was, and is, readily achievable, and other violations of the ADA, still exist at the Subject Facility and have not been remedied, or altered, in such a way as to effectuate compliance with the provisions of the ADA.

138.     Pursuant to the ADA, 42 U.S.C. §12101, §12182, and 28 C.F.R. §36.304, the Defendants were required to make their Subject Facility accessible to persons with

disabilities, and should have removed architectural barriers by January 26, 1992. To date, the Defendants have failed to comply with that mandate.

139.     The Defendants' failure to remove the barriers to access constitutes a pattern and practice of intentional disability discrimination and is subject to enforcement under 42 U.S.C. §12188 and 28 C.F.R. §503.

140.     It was not structurally impracticable for the Defendants to make the Subject Facility accessible.

141.     Removal of all architectural barriers existing at the Subject Facility was, and is, readily achievable by the Defendants.

142.     The Defendants may, should and are required to make reasonable accommodations at the Subject Facility and their making them would be readily achievable.

143.     Accommodations to the Plaintiff, and other persons similarly situated, and removal of architectural barriers at the Subject Facility by the Defendants, are readily achievable, would not impose an undue hardship on them and would not fundamentally alter the nature of their program, activity, or nature of the business.

144.     The Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA in connection with the Subject Facility.

145.     The Defendants' failure to make their Subject Facility accessible denied the Plaintiff and others, similarly situated, an equal opportunity to participate in, or to benefit from, services, or accommodations, on the basis of their disability.

146.     The effect of the practices complained of has been to deprive the Plaintiff, and all other similarly situated individuals, of the full and equal enjoyment of the Subject Facility

and to otherwise adversely affect his status as a member of the public interested in accessing the place of public accommodation owned, leased, leased to, constructed, maintained, managed and/or operated by the Defendants.

147.     The Subject Facility is not accessible to, or readily usable by, individuals with disabilities.

148.     Pursuant to 42 U.S.C. §12188, this Court was vested with the authority to grant the Plaintiff injunctive relief, including an order to alter the Subject Facility, to make it accessible to, and useable by, the Plaintiff, and other similarly situated individuals with disabilities, to the extent required by the ADA, as well as close the Subject Facility until the required modifications are completed.

149.     The Defendants' flagrant disregard for the ADA, and the New York laws, which obligate them to make all readily achievable accommodations and modifications to remove architectural barriers to access and use of their Subject Facility is legally inexcusable. Allowing the Defendants to deleteriously detrimentally prolong their practices would encourage them to continue to blatantly disregard the ADA, the New York State Civil laws, and the New York State and City Human Rights laws, and discriminate against the Plaintiff, and other similarly situated individuals.

150.     The inexcusability of the Defendants' actions is exacerbated by the fact that over 25 years have passed since the effective date of Title III of the ADA. During that time period they operated at a profit, should have accumulated sufficient funds to make alterations and had numerous opportunities to remove the architectural barriers and end discrimination, but intentionally chose not to do so. By intentionally not removing the architectural barriers, which barred the Plaintiff's access, inconvenienced and embarrassed

him, humiliated him and caused him personal injuries, including emotional distress to him, and others similarly situated, the Defendants gave a crystal-clear message to disabled customers that their patronage is neither needed, desired, welcomed, or wanted.

## SECOND CAUSE OF ACTION

### Violations of the New York State Human Rights Laws

151.    The Plaintiff re-alleges, and incorporates, by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

152.    The New York State Human Rights Law, in relevant part, provides the following:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of … disability … .

NYS Executive Law §296(2)(a)

153.    The Subject Facility is a place of public accommodation, as defined in New York State Human Rights Law §292(9).

154.    The Defendants have further violated the New York State Human Rights Law by being in violation of the rights provided under the ADA.

155.    The Defendants are in violation of the New York State Human Rights Law by denying the Plaintiff, and others similarly situated, full and safe access to all of the benefits, accommodations and services of the Subject Facility.

156.     The Defendants do not provide the Plaintiff, and others similarly situated, with equal opportunity to use their public accommodation.

157.     The Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law §296(2)(c)(iii).

158.     As a direct and proximate result of the Defendants' unlawful discrimination, which is in violation of the Executive Law, the Plaintiff has suffered, and continues to suffer, personal injuries, which include emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety.

159.     The Defendants have not provided the Plaintiff, and others similarly situated, with evenhanded treatment in violation of New York State Human Rights Law §296.

160.     The Defendants' direct, or indirect, unequal treatment of the Plaintiff, and others similarly situated, was demonstrated when he was discriminated against.

161.     The Defendants have, because of the Plaintiff's disability, directly, or indirectly, refused, withheld from, or denied him the accommodations, advantages, facilities, or privileges of their public accommodation.

162.     The Defendants have demonstrated that the patronage, or custom, of the Plaintiff, and other similarly situated individuals, is unwelcome, unwanted, undesirable, unacceptable and objectionable.

163.     In violation of the New York State Human Rights Law, the Defendants and their agents discriminated against the Plaintiff.

164.     As a direct and proximate result of the Defendants' unlawful discrimination, which was, and is, in violation of the New York State Human Rights Law, the Plaintiff has suffered, and continues to suffer, personal injuries, such as mental anguish and emotional

distress, including, but not limited to, depression, humiliation, stress, embarrassment, anxiety, loss of self-esteem and self-confidence, together with emotional pain and suffering.

165.     The Plaintiff requests compensatory damages from each Defendant in the amount of $1,000 under the New York State Human Rights Law, NY CLS Exec §297(9).

## **THIRD CAUSE OF ACTION**

### **Violations of the New York State Civil Rights Laws**

166.     The Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

167.     The Defendants have violated the Plaintiff's civil rights on the basis of his disability.

168.     Consequently, the Plaintiff is entitled to recover the penalty prescribed by New York State Civil Rights Law §40-c and §40-d, in the amount of $500 for each violation from each Defendant.

169.     Pursuant to New York State Civil Rights Law §40-d, the Defendants are guilty of a class A misdemeanor.

170.     Notice of this action is being served upon the attorney general, as required by New York Civil Rights Law, §40-d, in accordance with the statute.

## FOURTH CAUSE OF ACTION

### Violations of the New York City Human Rights Law

171.     The Plaintiff re-alleges, and incorporates by this reference, all the allegations set

forth in this complaint, as if fully set forth herein.

172.     The New York City Human Rights Law, in relevant part, provides the below.

> It shall be an unlawful discriminatory practice for any person
> who is the owner, franchisor, franchisee, lessor, lessee,
> proprietor, manager, superintendent, agent or employee of
> any place or provider of public accommodation:
>> 1. Because of any person's actual or perceived …
>> disability …, directly or indirectly:
>>> (a) to refuse, withhold from or deny to such
>>> person the full and equal enjoyment, on equal
>>> terms and conditions, of any of the
>>> accommodations, advantages, services,
>>> facilities or privileges of the place or provider
>>> of public accommodation;

NYC Admin. Code §8-107(4)

173.     The Defendants have not reasonably accommodated the Plaintiff, and other

disabled individuals, in violation of New York City's Administrative Code §8-102(4), (16),

(17), (18), §8-107(4) and §8-107(15).

174.     In violation of the New York City Administrative Code, the Defendants have

unlawfully discriminated against the Plaintiff and all others similarly situated.

175.     Reasonable accommodations and modifications are necessary to enable the

Plaintiff, and all others similarly situated, the ability to enjoy non-restricted access and use

of the Defendants' Subject Facility.

176.     In violation of the New York City Administrative Code the owners, operators,

lessees, proprietors, managers, agents and/or employees of the Subject Facility have,

because of the actual, or perceived, disability of the Plaintiff directly, or indirectly, refused, withheld from, and denied him the accommodations, advantages, facilities, or privileges thereof.

177.    In violation of the New York City Administrative Code, on the basis of the Plaintiff's disability, the Defendants have demonstrated that the patronage, or custom, of the Plaintiff, and all others similarly situated, is unwelcome, objectionable and not acceptable.

178.    The Defendants are in violation of the New York City Human Rights Law by denying the Plaintiff full and safe access to all of the benefits, accommodations and services of the Subject Facility.

179.    Pursuant to New York City Human Rights Law §8-502(c), notice of this action is being served upon the New York City Commission on Human Rights in accordance with the statute.

180.    As a direct and proximate result of the Defendants' disability discrimination, in violation of the New York City Human Rights Law, the Plaintiff has suffered, and continues to suffer, personal injuries, including mental anguish and emotional distress, including, but not limited to, depression, humiliation, stress, embarrassment, anxiety, loss of self-esteem and self-confidence, emotional pain and suffering.

181.    The Plaintiff requests compensatory damages in the amount of $1,000 from each Defendant under the New York City Human Rights Law, NYC Admin. Code §8-125.

## ATTORNEY'S FEES AND COSTS

182.    The Plaintiff had to retain the undersigned counsel for the filing and prosecution of

this action. The Plaintiff is entitled to have his reasonable attorney's fees, including

litigation expenses, and costs, including expert fees, paid by the Defendants, pursuant to

the ADA, 28 C.F.R. §36.505 and New York Executive Law §297(10). Furthermore,

pursuant to the New York City Human Rights Law, the Court may award the prevailing

party reasonable attorney's fees. Under that law's definition "prevailing" includes a

Plaintiff, whose commencement of litigation has acted as a catalyst to effect policy change

on the part of the defendant. NYCHRL, in pertinent part, states the below.

> In any civil action commenced pursuant to this section, the
> Court, in its discretion, may award the prevailing party
> reasonable attorney's fees, expert fees and other costs. For
> the purposes of this subdivision, the term "prevailing"
> includes a Plaintiff whose commencement of litigation has
> acted as a catalyst to effect policy change on the part of the
> defendant, regardless of whether that change has been
> implemented voluntarily, as a result of a settlement or as a
> result of a judgment in such Plaintiff's favor. The Court shall
> apply the hourly rate charged by attorneys of similar skill
> and experience litigating similar cases in New York County
> when it chooses to factor the hourly rate into the attorney's
> fee award.

NYC Admin. Code §8-502(g)

## COMPENSATORY AND STATUTORY MONETARY DAMAGES

183.    The Plaintiff requests compensatory damages in the amount of $1,000 from each

Defendant under the New York State Human Rights Law, NY CLS Exec §297(9) and the

New York City Human Rights Law, NYC Admin. Code §8-125.

> In calculating compensatory damages under the NYSHRL
> and the NYCHRL, a Court in the Southern District of New

> York just a few months ago found relevant the fact that '[t]he New York City Human Rights Commission has deemed awards of $1,000 to be sufficient in cases where complainants did not establish any particular damage 'other than what a decent and reasonable individual would suffer when faced with such ignorant behavior.'

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429, (quoting and adapting Kreisler, 2012 WL 3961304, at *14)

184.    The Plaintiff requests statutory monetary damages in the sum of $500 from each Defendant to compensate him for their violation of New York Civil Rights Law §40-c and §40-d.

> New York Civil Rights Law §40-c holds that *any person* [emphasis added] who shall violate any of the provisions of New York Civil Rights Law §40-d 'shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any Court of competent jurisdiction in the county in which the defendant shall reside. … [T]his Court has the authority to order Defendant to pay Plaintiff the $500 in statutory damages contemplated by the New York Civil Rights Law for the disability discrimination Plaintiff has suffered….

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429

185.    The reason the Plaintiff requests $500 from each Defendant, and not a lower amount envisioned by the statutes, is due to the high number and extent of the violations, which were alleged in detail in this complaint. Furthermore, the number of violations may be even greater, and they may be even more extensive, than those alleged here and it is likely that they will be revealed upon inspection of the Subject Facility by an expert.

## PUNITIVE DAMAGES

186.     The Plaintiff requests punitive damages from each Defendant to compensate him

for their violation of the New York City Human Rights Law.

> With respect to punitive damages, "the standard for
> determining damages under the NYCHRL is whether the
> wrongdoer has engaged in discrimination with willful or
> wanton negligence, or recklessness, or a 'conscious
> disregard of the rights of others or conduct so reckless as to
> amount to such disregard.'" Chauca v. Abraham, 885 F.3d
> 122, 124 (2d Cir. 2018) (quoting Chauca v. Abraham, 30
> N.Y.3d 325, 67 N.Y.S.3d 85, 89 N.E.3d 475, 481 (N.Y.
> 2017)). This standard requires "a lower degree of
> culpability" than is required for punitive damages under
> other statutes, as it "requires neither a showing of malice nor
> awareness of the violation of a protected right." Id. (quoting
> Chauca, 89 N.E.3d at 481).

Kreisler v. Humane Soc'y of N.Y., 2018 U.S. Dist. LEXIS 171147

## INJUNCTIVE RELIEF

187.     Pursuant to 42 U.S.C. §12188 this Court is vested with the authority to grant the

Plaintiff injunctive relief, including an order to alter the Subject Facility to make it readily

accessible to, and useable by, individuals with disabilities to the extent required by the

ADA, the New York State Civil Rights Law, the New York State Human Rights Law, the

New York City Human Rights Law and close the Subject Facility until the requisite

modifications are completed.

188.     The Plaintiff requests the Court to issue a permanent injunction enjoining the

Defendants from disability discrimination.

189.     The Plaintiff requests the Court to issue a permanent injunction and order the

Defendants to alter their Subject Facility to make it readily accessible to and usable by

individuals with disabilities. To achieve that, the Plaintiff requests the Court to adapt relief

ordered in Shariff v. Alsaydi, 2013 WL 4432218. The Plaintiff requests the Court to order

the Defendants to prepare architectural plans remedying the violations of the 2010

Standards and to provide the Plaintiff's counsel with those plans for review within 60 days

of the Court's order. The Plaintiff also requests that the injunction provide him with 30

days to file a motion seeking relief should the Defendants' proposed architectural plans be

inadequate to remedy the 2010 Standards violations specified in this complaint. The

Plaintiff further requests that the injunction requires the Defendants to implement the

architectural plans and remedy the violations within 60 days of either the Plaintiff's

agreement, or a ruling by the Court stating that the plans are adequate.

190.     The Plaintiff requests the Court to issue a permanent injunction requiring the

Defendants to make all necessary modifications to the Defendants' policies, practices and

procedures, so that the Plaintiff, and other persons similarly situated, would not be subject

to further unlawful discrimination.

191.     Injunctive relief is also necessary to order the Defendants to provide auxiliary aid,

or service, and/or alternative methods, to allow the Plaintiff, and others similarly situated,

to use the place of public accommodation in accordance with Title III of the ADA, the New

York State Civil Rights Laws, and the New York State and City Human Rights Laws.


**DECLARATORY RELIEF**

192.     The Plaintiff is entitled to declaratory relief for the violations committed by the

Defendants, specifying the rights of the Plaintiff, and other persons similarly situated, as

to the removal of the architectural barriers from the Subject Facility by the Defendants, and as to their policies, practices, procedures, facilities, goods and services.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff hereby respectfully demands judgment against the Defendants, jointly and severally, and requests that this Court:

A.      Certify this case as a class action;

B.      Grant a permanent injunction

    i.)  Enjoining the Defendants, their officers, management personnel, employees, agents, successors and assigns from engaging in discrimination based on disability;

    ii.)  Requiring the Defendants to alter their Subject Facility to make it readily accessible to, and usable for, individuals with disabilities;

    iii.)  Compelling the Defendants to make all necessary modifications to their policies, practices and procedures, so that the Plaintiff would not be subject to further discrimination;

    iv.)  Ordering the Defendants to provide auxiliary aids and services, as well as to modify their policies, or procedures, or provide an alternative method, so that the Plaintiff would be able to obtain the full and equal enjoyment of the Subject Facility owned, operated, maintained, or leased, by the Defendants, in accordance with Title III of the ADA, the New York State Civil Rights Laws, and the New York State and City Human Rights Laws; and

    v.)  Ordering the Defendants to make the Subject Facility readily accessible to and usable by individuals with disabilities.

C.      Enter declaratory judgment specifying the Defendants' violations of the ADA, the New York State Civil laws, the New York State and City Human Rights laws, and declare the rights of the Plaintiff, and other persons similarly situated, as to the Defendants' policies, procedures, facilities, goods and services offered to the public;

D.      Enter declaratory judgment specifying that the Subject Facility owned, operated, leased, controlled, maintained and/or administered by the Defendants violates the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

E.      Enter an order requiring the Defendants to alter their Subject Facility and amenities to make it accessible to, and usable by, individuals with disabilities to the full extent required by Title III of the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

F.      Hold each of the Defendants liable for $500 in statutory monetary damages for each violation and awards that sum to the Plaintiff pursuant to the New York State Civil Rights Laws §40-c and §40-d;

G.      Hold each of the Defendants liable for compensatory damages in the amount of $1,000 under the New York State and City Human Rights laws.

H.      Hold each of the Defendants liable for punitive damages for their violation of the New York City Human Rights Law.

I.      Find the Defendants guilty of class A misdemeanor pursuant to New York State Civil Rights Law §40-d;

J.      Retain its jurisdiction over the Defendants until their unlawful practices, acts and omissions no longer exist;

K.     Find that the Plaintiff is a prevailing party in this litigation and award attorney's fees, expert fees, costs and expenses, together with such other and further relief at law, or in equity, to which the Plaintiff, and other persons similarly situated, may be entitled; and

L.     Award such other and further relief as it deems necessary, just and proper.


## JURY DEMANDED

The Plaintiff demands a trial by jury of all the issues of fact and damages.


Signed: April 1, 2020

*Michael Grinblat*

Michael Grinblat, Esq. (4159752)

Law Offices of Michael Grinblat
817 Broadway, Fourth Floor
New York, NY 10003
Tel:  (347) 796-0712
Fax:  (212) 202-5130
michael.grinblatesq@gmail.com
*Attorney for the Plaintiff*